ROBERT L. BLAND, Judge.
The claim for which an award is sought in this case is in the sum of $85,686.20 and arises out of a highway construction project in Hardy county, West Virginia.
In 1931 the state, acting by and through its agency, the state road commission, under a certain advertising duly published and posted according to law, invited proposals for building and completing, according to plans then on file in the office of the state road commission, and according to plans and specifications of the road commission, a certain road in said county of Hardy, from Lost City to the Virginia line, known as project *444 no. 3471-b, being approximately 59,136 feet in length. Pursuant to said advertisement, claimant, Polino Construction Company, submitted to the commission a written proposal and bid for building and completing said road according to said plans and specifications. Being the lowest responsible bidder therefor the contract for said work was awarded to claimant for the unit prices specified in its proposal and bid, amounting in the aggregate to $216,368.84. Thereupon claimant entered into a contract with the state of West Virginia, by and through the state road commission, bearing date on the 23rd day of April, 1931, for the construction of said project. The plans and specifications for the project were made parts of the contract.
Claimant contends that there was submitted with said contract, as part thereof, certain plats, tables, estimates, and blueprints showing the course of said road, locating the highway, and showing cuts and fills, and certain measurements on said cuts and fills, and estimating the amount of yardage and excavations- from the cuts, and the amount of yardage required to make fills. It says that it employed an efficient and competent engineer to go over the plans and specifications and to check the final estimate submitted by the state road commission in order to determine, as best it could determine, the amount of yardage to be removed and the yardage required to make certain fills; and that the engineer or engineers employed by the road commission to make the drawings, estimates, and tables failed to take into account and make allowance for what is known among contractors, road builders, and engineers as “swells.” “Swells” are a condition of compaction of materials to be removed which produce more actual yardage in excavation than the measurements of the engineer total.
It is claimed that the land and territory in which the project was embraced was known to the road commission as a territory in which there would be “swells.”
Claimant further says that in building roads there is another condition often found which is termed “shrinkage,” *445 wherein a certain allowance must be made on account of ready compaction of the materials removed from and excavation of the solid into a fill, which was known generally by the ¿road commission.
Claimant takes the position that the engineers for the state road commission, who worked on the project had not been advised of these conditions of “swell” and “shrinkage,” and did not make proper allowance or in any manner indicate in their blueprints, drawings, tables, or estimates, so that it, in checking drawings, tables, blueprints, and estimates would have knowledge that it would have to deal with such conditions, and that such conditions were unknown at the time it signed the contract. It may be apropos at this point, however, to observe that section 4 of said contract provides as follows:
“The contractor further agrees that he is fully informed as to all conditions affecting the work to be done, as well as to the labor and materials to be furnished for the completion of this work, and that such information was secured by personal investigation and research and not wholly from the estimate of the engineer; and that he will make no claim against the said state by reason of estimates, tests, or representations theretofore made by any officer or agent of said state.”
The schedule of prices contained in claimant’s proposal or bid and forming a part of his contract contemplated an approximate or estimated quantity of 400,000 cu. yds. of unclassified excavation at 30 cents per cu. yd. and 25,000 cu. yds. of borrow excavation, unclassified, at 30 cents per cu. yd. The plans and blueprints for the project as prepared by the commission’s engineers showed the profiles of the road and that the excavation from the cuts would be substantially the same amount of material necessary to make the corresponding fills. The total estimated amount of unclassified excavation for the project was 400,000 cu. yds., and the estimate as shown by the blueprints for the fills or embankments was 314,570 cu. yds. When the project was finally completed it was shown *446 that instead of the 400,000 cu. yds. estimated, the dirt actually excavated from the cuts and measured in the solid was 396,227 cu. yds., and that the dirt actually hauled away from the cuts and placed in the fills and otherwise amounted to 502,000 cu. yds., as measured in the fills. Claimant maintains that the materials excavated from the cuts as measured in the solid totaled 396,227 cu. yds., which was sufficient to make all the fills called for by the blueprints without requiring any borrow, and left an excess of 105,775 cu. yds. of material which had to be hauled away and disposed of otherwise than in the fills, as set forth on the blueprints, making a variation from the original blueprints of 33.4%. This condition was the result of the peculiar nature of the soil which was excavated from the cuts, it consisting of shale which when excavated and placed in the fills swelled. We think that it is sufficiently shown by the record that claimant encountered practically an unprecedented situation. It is the contention of claimant that this unprecedented and unforseen condition arising out of the peculiar nature of the soil constituted a risk or hazard which was not in the contemplation of either of the contracting parties. It argues that there was a mutual mistake of fact as to the estimate that the material removed from the cuts would be and could be, entirely disposed of in the fills. In other words, the claim made is not for any payment under the contract, but is more in the nature of a quasi-contractual claim for a benefit conferred upon the road commission by the claimant.
It is said that the road commission always figures a shortage instead of a swell for the material which is to go into the fill, and that claimant’s contract contemplated a shortage, as shown by the blueprints, for the reason that the blueprints estimated 400,000 cu. yds. of borrow and represented that the total of 425,000 cu. yds. would be just sufficient to make the estimated 314,570 cu. yds. of fill. It is argued, therefore, that according to the blueprints and specifications the commission itself figured on an allowance of 110,430 cu. yds. of shortage. It is pointed out that 105,773 cu. yds. of excess material had to be disposed of otherwise than in the fill as shown by the blue *447 prints and specifications and necessitated an additional expense to claimant. No claim is made for compensation for actually digging the dirt out of the cut, for the reason that that is covered by the contract itself. The claim for additional compensation is based at the point where the disposition of the dirt began after it had been excavated.
We think it is made quite clear upon the record that claimant actually sustained substantial loss in the performance of its contract, but it is equally clear that its claim for any additional compensation whatever other than that provided for by the contract could not be sustained under the terms and provisions of the contract. After the completion of the project claimant was afforded a hearing before the road commission in support of its claim for additional compensation, but the claim was rejected. There was no way under the law whereby the claim could be recognized, although the road commission as constituted at that time believed that the claim to some extent was possessed of merit. What seems to have been a rather thorough and comprehensive examination of the merits of the claim was given to it by a committee of the Legislature of 1937. It was considered fully. The Legislature of 1937 made an appropriation in favor of claimant in the amount of $12,313.83 to take care of the loss which it had sustained in the completion of the project for which the present claim is made. When that amount was paid to claimant by the road commission it executed and delivered a receipt therefor endorsed on the back of the final estimate for the road project, reading as follows:
“The Polino Construction Company of Fairmont, West Virginia, contractor for the construction of project 3471-B, Hardy County hereby accepts the amount of $12,879.70 as shown on this final estimate No. 18, as complete and final payment for all work performed in accordance with its contract and for all claims of any nature.
Polino Construction Company
Sam G. Polino
By Sam G. Polino, President.”
*448 Notwithstanding the above» mentioned appropriation and receipt therefor claimant now in this proceeding says that the reasonable and lair value placed upon the extra services which it rendered under its said contract with the road commission made necessary by reason of errors of the commission, is $44,000.00.
In addition to said claim for $44,000.00 claimant says that in the years 1930, 1931, and 1932 it had bought certain machinery and equipment on the payment plan, the total contract price for which equipment amounted to $64,000.20, and that by reason of the extra work and lime required in completing the project under the terms of its said contract and due to the neglect and failure of the road commission to pay for its alleged extra work and time required to complete the project aforesaid it was unable to meet its installment payments due on said machinery and in consequence of such failure lost said machinery and equipment, and says that there is now due and owing it from the state road commission, after allowing credit for the award made as aforesaid by the Legislature and all other credits or setoffs to which the respondent is in any wise entitled, the just and full sum of $85,680.20.
We are of the opinion that it was the intention of the Legislature in appropriating the said sum of $12,313.83 in favor of claimant to compensate it to the extent to which it believed it was entitled to be compensated for all work and labor done and performed in the completion of the Hardy county project and that claimant so understood that to be true when it executed and delivered to the road commission its receipt for the amount of said appropriation. In Massing v. State, 14 Wisc, 502, it is held:
“Where an act of the Legislature makes an appropriation as in full payment of a demand some portion of which was controverted or disallowed, the acceptance of the money is a bar to any further claim on account of such demand in cases where there is no *449 evidence of fraud, accident or mistake in matter of fact.”
In the instant ease no fraud, accident or mistake is shown. The money was voluntarily accepted by claimant.
The claim will be denied and an order entered accordingly.